# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | |
|---|---|
| TIMOTHY L.,[1] | Case No. 3:20-cv-0152 |
| Plaintiff, | Magistrate Judge Caroline H. Gentry |
| vs. | (by full consent of the parties) |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

# DECISION AND ORDER

## I. INTRODUCTION

Plaintiff filed an application for Supplemental Security Income in October 2016. Plaintiff's claims were denied initially and upon reconsideration. After a hearing at Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not eligible for benefits because he was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review. Plaintiff subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision. This matter is before the Court on Plaintiff's

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

Statement of Errors (Doc. 10), the Commissioner's Memorandum in Opposition (Doc. 12), Plaintiff's Reply (Doc. 13), and the administrative record (Doc. 9).

## II. BACKGROUND

Plaintiff asserts that he has been under a disability since December 16, 2015. At that time, he was forty-three years old. He was forty-four years old on the application date. Accordingly, Plaintiff was considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c).[2] Plaintiff has a high school education. *See* 20 C.F.R. § 404.1564(b)(4).

The evidence in the administrative record is summarized in the ALJ's decision (Doc. 9, PageID 50-57), Plaintiff's Statement of Errors (Doc. 10), the Commissioner's Memorandum in Opposition (Doc. 12), and Plaintiff's Reply (Doc. 13). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

## III. STANDARD OF REVIEW

The Social Security Administration provides Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which … has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R.

---

[2] The remaining citations will identify only the pertinent Disability Insurance Benefits Regulations, as they are similar in all relevant respects to the corresponding Supplemental Security Income Regulations.

§ 404.1505(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence

3

supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" (*Id.*) (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## IV. THE ALJ'S DECISION

As noted previously, the ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. The ALJ made the following findings of fact:

Step 1: Plaintiff has not engaged in substantial gainful activity since October 18, 2016, the Supplemental Security Income application date.

Step 2: He has the severe impairments of "degenerative disc disease of the lumbar and thoracic spine, post-laminectomy syndrome, peripheral neuropathy, and trochanteric bursitis and impingement of the right hip."

Step 3: He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: His residual functional capacity (RFC), or the most he can do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of the following limitations: "lift and carry up to 20 pounds occasionally and ten pounds frequently, and could stand and/or walk for two hours in an eight hour work day and sit for six hours in an eight hour work day. He would be able to engage in occasional pushing and pulling with the lower extremities,

4

>           but not on a continuous basis, and could engage in occasional foot controls bilaterally, but not on a continuous basis. The claimant could also occasionally balance, stoop, kneel, crouch, and climb ramps and stairs, but could never crawl, climb ladders, ropes, or scaffolds, work at unprotected heights or around dangerous machinery, or operate a motor vehicle. He must also avoid concentrated exposure to extreme cold."
>
>           He is unable to perform any of his past relevant work.
>
> Step 5:   Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform.

(Doc. 9-2, PageID 47-57.) These findings led the ALJ to conclude that Plaintiff does not meet the definition of disability and so is not entitled to benefits. (*Id.*, 57.)

## V.    ANALYSIS

Plaintiff asserts that the ALJ reversibly erred in evaluating the symptom severity and by interpreting objective medical data in functional terms. (Doc. 10, PageID 1279, 1283.)

The Social Security Administration uses a two-step process for evaluating an individual's symptoms. Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, *3 (Oct. 25, 2017) (effective March 28, 2016). First, the ALJ must determine whether an individual has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms. *Id.* Second, the ALJ must evaluate the intensity and persistence of the individual's symptoms and determine the extent to which the individual's symptoms limit her ability to perform work-related activities. *Id.* at *4. The ALJ must examine "the entire case record, including the objective medical evidence;

5

the individual's relevant statements; statements and other information provided by medical sources and others; and any other relevant evidence in the record." *Id.* at *4-5.

In addition to all of the evidence, the ALJ should consider the following factors:

1. Daily activities;
2. The location, duration, frequency, and intensity of pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Id*. at *7-8; *see also* 20 C.F.R. § 404.1529(c)(3). However, an ALJ does not necessarily need to discuss every factor in every case – for example, if there is no evidence regarding one of the factors, that factor will not be discussed because it is not relevant to the case. SSR 16-3p at *8.

In this case, the ALJ followed the required steps. The ALJ first determined that Plaintiff has medically determinable impairments (degenerative disc disease of the lumbar and thoracic spine, post-laminectomy syndrome, peripheral neuropathy, and trochanteric bursitis and impingement of the right hip) that could reasonably cause the type of symptomatology alleged. (Doc. 9-2, PageID 47, 54.) Next, the ALJ considered the evidence in the record and concluded that Plaintiff's statements about the intensity,

6

persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence of record. (*Id.* at PageID 50.)

Plaintiff challenges the ALJ's analysis at the second step, arguing that his reports of symptoms are "'reasonably' consistent with the record." (Doc. 10, PageID 1279-82.) This argument fails because the ALJ adequately considered the objective medical and other evidence when evaluating the intensity and persistence of Plaintiff's symptoms, and substantial evidence supports her conclusion.

For example, the ALJ provided a detailed summary of Plaintiff's medical records and treatment history. (Doc. 9-2, PageID 51-55.) The ALJ acknowledged many of the abnormal examination findings in the record, including those identified in Plaintiff's brief, and weighed these abnormal findings against other normal findings in the record. (*Id.*) The ALJ found some limited improvement with treatment. (*Id.*) She explained that although Plaintiff's providers sometimes documented findings including positive straight leg raising, lower extremity paresthesia and weakness, and an antalgic gait, Plaintiff also presented with a non-antalgic gait on several occasions. (*Id.* at PageID 54-55.) Plaintiff also generally retained normal strength and tone, was able to heel/toe walk and tandem gait without noted difficulty, and was capable of ambulating without an assistive device. (*Id.*) The ALJ concluded that the balance of the objective evidence of record did not support Plaintiff's allegations of symptom severity. Nevertheless, she accounted for the objective findings by limiting Plaintiff to the range of sedentary to light work set forth in the RFC. The ALJ's conclusion is supported by substantial evidence.

Plaintiff also references two heart attacks in support of his argument that his symptom reports are reasonably consistent with the medical record. (Doc. 10, PageID 1279, 1281, 1284.) The ALJ addressed these cardiac events at Step Two and concluded that Plaintiff's cardiovascular history is not "severe." (Doc. 9-2, PageID 48.) In support of this conclusion, the ALJ explained that the record documents "no more than minimal treatment" following the September 2016 event. (*Id.*) The ALJ also cited to testing performed after the August 2018 myocardial infarction, which showed only "mild residual coronary artery disease with mild inferior wall hypokinesis and overall preserved left ventricular systolic function with an ejection fraction of 55 to 60 percent." (*Id.*) Further, the ALJ recognized that Plaintiff was treated with an anticoagulation regimen and had "[n]o further issues or treatment" after that time (*Id.*). These conclusions at Step Two are supported by substantial evidence.

Plaintiff points out that the State agency reviewers found that Plaintiff's statements regarding symptoms were "fully consistent" with the medical and non-medical evidence of record, thereby implying the ALJ should have also found Plaintiff's allegations to be consistent with the record. (Doc. 10, PageID 1279, citing Doc. 9-3, PageID 117, 131.) However, these physicians reviewed the record as it existed in November 2016 and March 2017, just a few months after the application date, and they actually found that Plaintiff was somewhat *less* limited than the ALJ's RFC. (*Id.* at PageID 120, 133.) Moreover, as discussed above, the ALJ provided a detailed summary and analysis of Plaintiff's medical records and treatment history. (Doc. 8-2, PageID 50-55.) The ALJ included the records submitted after the State agency assessments in this

summary and analysis. (*Id.*) The ALJ subsequently evaluated the opinions of the State agency reviewers, assigned weight pursuant to the rules for evaluating medical opinions, and found that additional limitations are warranted. (*Id.* at PageID 54-55.) The ALJ based these conclusions on the preponderance of the evidence for the entire relevant time period. (*Id.*) Accordingly, the ALJ adequately considered the State agency reviewers' conclusions when evaluating Plaintiff's symptom severity. The applicable legal framework did not require her to do more, and her conclusions are supported by substantial evidence.

Plaintiff also challenges the ALJ's consideration of Plaintiff's daily activities. (Doc. 10, PageID 1282-83.) Plaintiff states in his brief: "The ALJ specifically found that her RFC determination 'is supported by the claimant's testimony that she (sic) can perform a variety of daily activities' (ID 54), but [Plaintiff] testified that his pain was 'a lot worse' since December 2015." (Doc. 10, PageID 1282.) Plaintiff also asserts that minimal daily functions are not comparable to typical work activities. (*Id.*)

Plaintiff's contentions are not well-taken. As an initial matter, it is well-established that Plaintiff's daily activities are relevant to the ALJ's evaluation of symptom severity. *See* 20 C.F.R. § 404.1529(c)(3)(i); SSR 16-3p, 2016 SSR WL 5180304, at *7; *Davis v. Comm'r of Soc. Sec. Admin,* No. 3:19-CV-117, 2020 WL 3026235, at *6 (S.D. Ohio June 5, 2020) (Ovington, M.J.), *report and recommendation adopted sub nom., Davis v. Comm'r of Soc. Sec.,* No. 3:19-CV-117, 2020 WL 6273393 (S.D. Ohio Oct. 26, 2020) (citing *Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 392 (6th

9

Cir. 2004) (holding that the ALJ justifiably considered Warner's ability to conduct daily life activities in the face of his claim of disabling pain.)).

Here, the ALJ appropriately considered Plaintiff's daily activities. The ALJ acknowledged Plaintiff's reported difficulties, which included "sit[ting] around at home," having "difficulty walking," and "tr[ying]" to wipe off surfaces and clean up after himself. (Doc. 9-2, PageID 54.) The ALJ also acknowledged that Plaintiff's provider "prescribed a handicap placard so he could park close when running errands and going to appointments" while taking care of his aging mother. (*Id.*) The ALJ balanced these statements with Plaintiff's other statements of daily activities for the entire relevant time period, as well as the objective medical evidence discussed above, and concluded that the evidence does not support Plaintiff's alleged symptom severity and degree of functional limitations. (*Id.,* PageID 53-54.) The ALJ's analysis of Plaintiff's testimony and daily activities is supported by substantial evidence and cannot be reversed by this Court.

Plaintiff cites to several cases in support of his argument that minimal daily functions are not comparable to typical work activities. (Doc. 10, PageID 1282, citing *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 248 (6th Cir. 2007); *Cohen v. Secretary of Department of Health and Human Services*, 964 F.2d 524-28 (6th Cir. 1992); *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012).) However, all of these cases are distinguishable from the current case.

The *Rogers* court found that the ALJ's description "mischaracterize[d] [the claimant's] testimony regarding the scope of her daily activities" and "fail[ed] to examine the physical effects coextensive with their performance." 486 F.3d at 248-49. However,

10

the ALJ in that case described the claimant as "fairly active." *Id.*, 248. The ALJ in this case accurately characterized Plaintiff's daily activities and their physical effects. As discussed above, the ALJ weighed Plaintiff's testimony about what he could do against his statements about his difficulties with daily activities, and she considered this with the objective evidence to limit Plaintiff to a range of sedentary to light work. (Doc. 9-2, PageID 50-54.)

In *Cohen*, the court noted that the ALJ's conclusions "were based primarily on the evidence of [the claimant's] level of activities for the period in question, which the ALJ found substantially undermined her credibility." 964 F.2d 524-28 (6th Cir. 1992). In this case, the ALJ based her conclusion primarily on the objective evidence, as demonstrated by her detailed analysis of the medical records. (Doc. 9-2, PageID 50-55.) The ALJ considered Plaintiff's reports of daily activities only as one additional factor in the analysis of Plaintiff's symptom severity, which is consistent with 20 C.F.R. § 404.1529(c)(3) and Social Security Ruling 16-3p.

Finally, *Bjornson* is a Seventh Circuit case which is not binding on this Court. 671 F.3d 640 (7th Cir. 2012). Moreover, even if it were governing law, it would be inapplicable here. The *Bjornson* court opined that the failure to recognize the differences between activities of daily living and work activities "is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases." *Id.* But in this case, the ALJ did not directly equate Plaintiff's reports of daily activities with the ability to perform work activity. Instead, the ALJ considered Plaintiff's daily activities as only one factor in her consideration of the entire record, as set forth in the

11

symptom severity analysis required by SSR 16-3p. The ALJ's evaluation of Plaintiff's daily activities is consistent with the applicable legal requirements and does not warrant reversal.

Plaintiff's contention that the ALJ "erred by attempting to translate the material raw medical data into functional limitations" (Doc. 10, PageID 1283) is also without merit. Plaintiff specifically cites to an October 15, 2017, lumbar CT scan. (*Id.*) However, the ALJ did not interpret the objective medical data beyond her ability to do so when she evaluated this and other imaging reports in the RFC analysis. (Doc. 9-2, PageID 49-55). The regulations require ALJs to evaluate the medical evidence to determine disability. *See* 20 C.F.R. § 404.1545(a)(3); *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) ( "[T]he ALJ is charged with the responsibility of evaluating the medical evidence"); *Coldiron v. Comm'r of Soc. Sec.,* 391 F. App'x. 435, 439 (6th Cir. 2010) ("The Social Security Act instructs that the ALJ—not a physician—ultimately determines a claimant's RFC.... An ALJ does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding.").

In this case, a radiologist read and interpreted the October 2017 lumbar CT scan. (Doc. 9-8, PageID 614.) The other imaging reports in the record were also read or interpreted by radiologists or other physicians. (*See, e.g.,* Doc. 9-9, PageID 1183, 1269, 1271.) The ALJ's conclusions regarding Plaintiff's spinal condition—and the limitations that she included in the RFC—are consistent with the doctors' interpretations of imaging and other evidence discussed in the decision. Accordingly, the ALJ did not make her own

12

independent medical findings or interpret raw medical data in functional terms. This argument is therefore not well-taken.

## VI. CONCLUSION

For the reasons discussed above, the ALJ properly applied the governing legal framework and substantial evidence supports her conclusions. Specifically, the ALJ evaluated Plaintiff's symptom severity pursuant to the applicable regulations, including Social Security Ruling 16-3p. The ALJ further provided reasonable explanations, supported by substantial evidence, for how she weighed the evidence. Accordingly, Plaintiff's Statement of Errors lacks merit.

**IT IS THEREFORE ORDERED THAT**:

1. Plaintiff's Statement of Errors (Doc. 10) is OVERRULED;

2. The Court AFFIRMS the Commissioner's non-disability determination; and

3. The case is terminated on the Court's docket.

*s/Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge
